Kerry J. Kaltenbach
Zhong Lun New York LLP
Two Wall Street, 21st Floor
New York, NY  10005
e-mail: kerrykaltenbach@zhonglun.com
tel: (212) 380-8388
fax: (212) 810-1995
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ZILONG WANG, an individual and citizen of the People's Republic of China; and QIUMIN CHENG, an individual and citizen of the People's Republic of China;<br><br>Plaintiffs,<br><br>-against-<br><br>1 DUPONT CIRCLE, LLC t/a WAHLBURGERS D.C., a Delaware Limited Liability Company; ZHIHUI "JULIE" GUO, an individual; GOODWIN LAW GROUP, P.C., a New York State Domestic Professional Corporation; WBDC HOSPITALITY, LLC, a Delaware Limited Liability Company; ALLIANCE CAPITAL INTERNATIONAL LIMITED, a Hong Kong Limited Company; US FORTUNE LIMITED, a Hong Kong Limited Company; MARK ANDREW SINGER, an individual; and, KEVIN BRODY, an individual;<br><br>Defendants. | Case No.:<br><br><br>**COMPLAINT AND JURY DEMAND** |

The plaintiffs, by and through their attorneys, Zhong Lun New York LLP, complaining of defendants, bring this action based upon wrongs perpetuated by the defendants and respectfully allege, upon facts as stated herein and upon information and belief, as follows:

**NATURE OF ACTION**

1.     This diversity action arises out of numerous wrongful acts of commission and omission by defendants in connection with an EB-5 immigration investment business known as 1

1

DUPONT CIRCLE, LLC, trading as WAHLBURGERS D.C., which purportedly intended to open a Wahlburgers restaurant franchise in Washington, D.C.

## PARTIES

2.      ZILONG WANG is an individual and citizen of the People's Republic of China residing in the State of Utah.

3.      QIUMIN CHENG is an individual, and citizen and resident of the People's Republic of China.

4.      1 DUPONT CIRCLE, LLC, trading as WAHLBURGERS D.C. is a Delaware Limited Liability Company with its principal place of business in the Town of Southampton, County of Suffolk, State of New York.

5.      ZHIHUI "JULIE" GUO, an individual, is a New York State licensed attorney and is either the owner of or an employee of GOODWIN LAW GROUP, P.C.

6.      GOODWIN LAW GROUP, P.C. is a New York State Domestic Professional Corporation doing business in Manhattan and with offices at 733 Third Avenue, New York City, County of New York, State of New York.

7.      WBDC HOSPITALITY, LLC is a Delaware Limited Liability Company with its principal place of business in the Town of Southampton, County of Suffolk, State of New York.

8.      ALLIANCE CAPITAL INTERNATIONAL LIMITED is a Limited Company of the Hong Kong Special Administrative Region of the People's Republic of China.

9.      US FORTUNE LIMITED is a Limited Company of the Hong Kong Special Administrative Region of the People's Republic of China.

10.     MARK ANDREW SINGER is an individual and resident of the Town of Southampton, County of Suffolk, State of New York.

11.     KEVIN BRODY is an individual and resident of the Borough of Stroudsburg, County of Monroe, Commonwealth of Pennsylvania.

## JURISDICTION

12.     The jurisdiction of this Court is based upon the complete diversity of citizenship of the plaintiffs and defendants, and the matter in controversy exceeds the sum or value of $75,000 exclusive of interest and costs pursuant to 28 U.S. Code § 1332(a)(2).

13.     Jurisdiction is also proper in this Court because this litigation arises under federal law, namely the Securities and Exchange Act of 1934, 15 U.S. Code § 78a et seq.  This Court has jurisdiction over this action pursuant to 28 U.S. Code § 1331.

14.     Venue is appropriate within this judicial district pursuant to 28 U.S. Code § 1391(b)(2) as a substantial part of the events and omissions giving rise to the claims asserted occurred within the County of New York, New York State.

## BACKGROUND AND FACTUAL ALLEGATIONS

15.     The EB-5 Immigrant Investor Program was created by the Immigration Act of 1990 and is administered by the United States Citizenship and Immigration Service.  The EB-5 investment program provides a pathway for immigrant investors to become lawful permanent residents by investing in a business expected to employ at least ten persons.  The threshold investment for the program is typically $1,000,000 but is lowered to $500,000 in rural areas or areas of high unemployment known as Targeted Employment Areas.  The EB-5 investment program is popular with immigrants from China, and EB-5 investment projects or businesses are often promoted to Chinese citizens.

- **Zhihui "Julie" Guo.**

16.     In 2016, ZHIHUI "JULIE" GUO ("GUO"), an attorney admitted to practice law in New York State and the People's Republic of China, and owner or employee of GOODWIN LAW GROUP, P.C. ("GOODWIN LAW"), promoted an EB-5 business for investment to a former colleague, Yulong Li, and Mr. Li's present colleague, Weidong Wang. Yulong Li is the husband of QIUMIN CHENG, and Weidong Wang is the father of ZILONG WANG.

- **1 Dupont Circle.**

17.     The EB-5 business and project which GUO promoted was 1 DUPONT CIRCLE, LLC trading as WAHLBURGERS D.C. ("1 DUPONT CIRCLE"), a franchisee or intended franchisee of a Wahlburgers restaurant and bar at that address in Washington, D.C. Wahlburgers is a franchise chain restaurant with a menu focused on burgers, named after celebrity brothers Donnie Wahlberg, Mark Wahlberg and Paul Wahlberg. The plaintiffs were to make an investment of $500,000 each, and each pay fees of $50,000 to cover "offering costs."

18.     GUO provided Mr. Li, Mr. Wang and the plaintiffs with a Confidential Private Placement Memorandum ("offering memorandum") for 1 DUPONT CIRCLE, along with a copy of 1 DUPONT CIRCLE's EB-5 Direct Investment Business Plan ("business plan"). The investments in 1 DUPONT CIRCLE, according to GUO, the offering memorandum and the business plan were to provide healthy returns, particularly given the popularity of the Wahlburgers chain, along with eventual unconditional United States permanent resident immigration status for both plaintiffs.

19.     After further discussions with GUO, Mr. Li and Mr. Wang eventually agreed to and did make investments of $500,000 each in 1 DUPONT CIRCLE, respectively on behalf of Mr.

Li's wife, QIUMIN CHENG, and Mr. Wang's son, ZILONG WANG, and paid fees of $50,000 each to cover "offering costs."

- **WBDC Hospitality, LLC, Mark Andrew Singer and Kevin Brody.**

20.     Management of 1 DUPONT CIRCLE and the Wahlburgers restaurant was to be, and was initially, handled by WBDC HOSPITALITY, LLC ("WBDC"), and specifically, by its principals, MARK ANDREW SINGER ("SINGER") and KEVIN BRODY ("BRODY").  WBDC was also to make an investment or capital contribution of 45.57% of total project costs in 1 DUPONT CIRCLE.

21.     On information and belief, SINGER was an owner, investor in, member, manager, officer and/or director of WBDC, but his role in the company was unofficial or "off the books" because he was previously permanently barred by the SEC from engaging in many investment-related activities due to a conviction for (or plea bargain to) investment-related theft.  Although SINGER's name appeared on few or no documents related to the businesses, he was a driving force behind WBDC and 1 DUPONT CIRCLE.

22.     On information and belief, BRODY was an owner and some point in time the 100% owner, at least officially or "on the books," of WBDC, and was a manager, officer and/or director of the company as well.  BRODY was also a driving force behind WBDC and 1 DUPONT CIRCLE.

- **The Operating Agreement.**

23.     1 DUPONT CIRCLE was governed by an "Operating Agreement of 1 Dupont Circle, LLC" ("Operating Agreement").  Under the Operating Agreement, 1 DUPONT CIRCLE was formed as a Delaware limited liability company consisting of a "Managing Member," WBDC, and "Investing Members," which were the plaintiffs.  The Managing Member, WBDC, was to

make a 45.57% capital contribution and have a 100% common equity membership interest, and the Investing Members were to make a 54.43% capital contribution and have a 100% preferred equity membership interest.

24.     The parties executed the Operating Agreement, and around June and September 2016, Mr. Wang and Mr. Li each made capital contributions of $500,000 and each paid an offering fee of $50,000 on behalf of ZILONG WANG and QIUMIN CHENG respectively.  As planned, the plaintiffs together invested $1,000,000 in 1 DUPONT CIRCLE.

25.     Given the plaintiffs' 54.43% capital contribution of $1,000,000, the 45.57% capital contribution of the Managing Member was required to be $837,222.12.   (The offering memorandum and the business plan by 1 DUPONT CIRCLE, both of which, on information and belief, were approved by SINGER and/or BRODY, specified that the Managing Member's capital contribution was to be $837,099.00.)

26.     Under the Operating Agreement, as Managing Member, WBDC was to have exclusive authority and discretion to administer 1 DUPONT CIRCLE except for certain major decisions.  Investing Members were not to participate in the day to day management, conduct or control of 1 DUPONT CIRCLE.

27.     The Operating Agreement, at Article 8.2, provided that "so long as any Investing Member remains as a Member in the Company, the Managing Member shall not enter into any transaction which materially change the management of the Company."

28.     The Operating Agreement further prohibited, at Article 8.3(2), the Managing Member from "perform[ing] any action which would make it impossible to carry on the ordinary business of the Company or which would be in contravention of the express terms of this Agreement."

29.     Additionally, the Operating Agreement provided, at Article 13.1, "that so long as any Investing Member remains as a Member in the Company, the Managing Member shall have no right to sell or assign all or any part of the Managing Member's Common Membership Interests to any Person without the prior written consent of the Investing Member Representative."

- **Transfers of Managing Member Common Equity Membership Interests from and between WBDC, Alliance Capital and US Fortune.**

30.     On information and belief, the "Managing Member" under the Operating Agreement changed, without the plaintiff's knowledge or consent, during the existence of 1 DUPONT CIRCLE due to transfers of common equity membership interests between WBDC, ALLIANCE CAPITAL INTERNATIONAL LIMITED ("ALLIANCE CAPITAL") and US FORTUNE LIMITED ("US FORTUNE").   (The "Managing Members" hereinafter refers collectively to WBDC, ALLIANCE CAPITAL, and US FORTUNE).

31.     On information and belief, at some time between execution of the Operating Agreement and November 22, 2017, WBDC transferred 18% of its common equity membership interests in 1 DUPONT CIRCLE to ALLIANCE CAPITAL, which materially changed the management of 1 DUPONT CIRCLE, without informing the plaintiffs or obtaining their written consent in violation of the Operating Agreement.   None of the defendants ever disclosed the transfer to the plaintiffs.

32.     On information and belief, subsequently, on or about November 22, 2017, pursuant to an Agreement Regarding Transfer of Ownership Interests, both WBDC and ALLIANCE CAPITAL each transferred 100% of their respective common equity membership interest in 1 DUPONT CIRCLE to US FORTUNE, which materially changed the management of 1 DUPONT CIRCLE, without informing the plaintiffs or obtaining their written consent in violation of the Operating Agreement.   None of the defendants ever disclosed the transfers to the plaintiffs.

- **The Managing Members All Failed to Make Their Capital Contributions to 1 Dupont Circle as Required by the Operating Agreement.**

33.   On information and belief, none of WBDC, ALLIANCE CAPITAL, or US FORTUNE ever made or fully made the capital contribution of $837,222.12, representing 45.57% of total project costs, required by the Operating Agreement in 1 DUPONT CIRCLE, and in violation of the Operating Agreement.

- **Transfers of Managing Members' Common Equity Membership Interests and the Failure by All of the Managing Members to Pay Rent Resulted in Termination of the Lease for the Wahlburgers Restaurant, Made it Impossible for 1 Dupont Circle to Carry on Its Ordinary Business, and Caused Failure of the EB-5 Restaurant Business.**

34.   On or about June 16, 2016, WBDC, entered into a fifteen-year commercial lease, with an option to renew, with the American Council on Education ("landlord") for the ground floor space at One Dupont Circle, N.W. in Washington, D.C. for the planned Wahlburgers restaurant. A $270,000 security deposit in the form of an irrevocable letter of credit was posted by WBDC, and monthly lease payments, starting in January 2017, were to be approximately $18,000 per month.

35.   In or about March 2017, after making only two full monthly lease payments and a partial monthly payment, WBDC ceased making monthly lease payments for the space at One Dupont Circle and the landlord began to draw lease payments from the security deposit in or around October 2017.

36.   In late 2017, the landlord learned, at least in part from November 29 and December 5, 2017 emails from GUO, that WBDC had transferred all of its common equity membership interests to US FORTUNE.  Citing a change in the tenant in violation of the lease, in or about January 2018, the landlord terminated the lease for One Dupont Circle.  In or about April 2018,

the landlord commenced eviction proceedings which resulted in WBDC, ALLIANCE CAPITAL

and/or US FORTUNE, along with 1 DUPONT CIRCLE, being evicted from the premises.

37.    Managing Member common equity membership interest transfers by and among

WBDC, ALLIANCE CAPITAL and US FORTUNE, along with their failure to make lease

payments and failure to bring lease payments current when the landlord instituted eviction

proceedings, caused the failure of the business of 1 DUPONT CIRCLE to establish a Wahlburgers

restaurant at 1 Dupont Circle in Washington, D.C. and made it impossible to carry on the ordinary

business of 1 DUPONT CIRCLE, all of which occurred in violation of the Operating Agreement.

- **Guo's Role Went Far Beyond Immigration Attorney for the Plaintiffs and She Provided Legal, Business and Investment Services to Them on the "Project Side" of 1 Dupont Circle.**

38.    GUO was officially retained to act as the immigration attorney for the plaintiffs'

EB-5 petitions in connection with the 1 DUPONT CIRCLE EB-5 project.  However, GUO deeply

involved herself in the promotion of 1 DUPONT CIRCLE to Mr. Li and Mr. Wang, and acted as

and was, in the beginning of the project, a liaison for them for the "project side" of the business.

39.    GUO advised Mr. Li and Mr. Wang that 1 DUPONT CIRCLE was one of the best

EB-5 immigration projects on the market in terms of investment security.

40.    GUO brought Mr. Li, Mr. Wang and the plaintiffs to the 1 DUPONT CIRCLE

investment project and knew that it would be operated by SINGER and BRODY in their capacities

as principals of WBDC, and that both men would be fiduciaries of the plaintiffs and their

investments.

41.    GUO knew, or at least should have known with the performance of due diligence,

that both SINGER and BRODY were not suitable fiduciaries, were disreputable and dishonest,

and were untrustworthy and corrupt.  It was readily available information that SINGER had already

been permanently barred by the SEC from engaging in many investment-related activities due to his criminal conviction for (or guilty plea to) participating in investment-related theft of over $22 million.  BRODY was at the time, on information and belief, involved in a $10 million "Ponzi scheme" for which he has since been criminally indicted in Nassau County in the State of New York.

42.     GUO provided all legal documents for 1 DUPONT CIRCLE to Mr. Li and Mr. Wang, some of which were translated into written Chinese, and instructions to them on how to execute the documents.  GUO explained the legal and business aspects of key documents to Mr. Li and Mr. Wang and represented to them that she negotiated very favorable terms for the plaintiff investors.  GUO further represented to Mr. Li and Mr. Wang that she was regularly communicating with the "project side" or "transaction side" of 1 DUPONT CIRCLE on their behalf and that she personally travelled to Washington, D.C. to check on the status of the business and the Wahlburgers restaurant project on their behalf.

- **GUO Made Misrepresentations and Failed to Disclose Numerous Material Facts to the Plaintiffs.**

43.     GUO was the 100% owner of US FORTUNE, which by late 2017 was the Managing Member of 1 DUPONT CIRCLE.  GUO failed to disclose this material fact to the plaintiffs.  GUO was also, for a period when it was a Managing Member, a 49% owner of ALLIANCE CAPITAL and likewise failed to disclose this material fact to the plaintiffs.

44.     GUO, as the 100% owner of US FORTUNE, participated in transferring ownership from WBDC and ALLIANCE CAPITAL to US FORTUNE, which caused breach of the lease by and eviction of 1 DUPONT CIRCLE and the Walhburgers restaurant.  GUO failed to disclose this material fact to the plaintiffs.

45.     US FORTUNE, owned by GUO, became the sole Managing Member of 1 DUPONT CIRCLE, and it failed to come current on lease payments for 1 DUPONT CIRCLE which caused breach of the lease by and eviction of 1 DUPONT CIRCLE and the Walhburgers restaurant.  GUO failed to disclose this material fact to the plaintiffs.

46.     By the end of 2017, the plaintiffs and their representatives, still unaware of the imminent eviction of 1 DUPONT CIRCLE, requested to withdraw their investments due to lack of any progress in the project and business.  GUO misrepresented to the plaintiffs that the restaurant was under renovation and would have a grand opening soon.

47.     When the plaintiffs and their representatives finally learned that the Wahlburgers restaurant would not be opening at One Dupont Circle, GUO misrepresented to them it was due to a change of heart by the landlord.

48.     When the plaintiffs and their representatives finally learned there had been a change in the Managing Member of 1 DUPONT CIRCLE, GUO misrepresented to them that the change and the ownership transfer documents were confidential and as an attorney, she could not release them to third parties.  GUO further misrepresented that the plaintiffs and their representatives were not entitled to know about the Managing Member change because they merely held preferred equity membership interests in 1 DUPONT CIRCLE.

- **Singer, Brody and Guo as Alter Egos of their Respective Managing Members.**

49.     SINGER and BRODY were or are principals, directors, officers, employees, members and/or owners of and investors in WBDC.

50.     ZHIHUI "JULIE" GUO is or was a principal, director, officer, employee, member and/or owner of both ALLIANCE CAPITAL and US FORTUNE.

51.     On information and belief, SINGER, BRODY and GUO disregarded company formalities in conducting business such that the respective company forms were a mere sham. Each had a total unity of interest with their respective companies and exercised complete dominion and control over their respective companies in such a way as to perpetrate the wrongdoings set forth herein against the plaintiffs.

52.     On information and belief, SINGER and BRODY both kept WBDC grossly undercapitalized when each was individually and personally required to provide funds to it so that it could make its required capital contribution to 1 DUPONT CIRCLE of at least $837,222.12. Indeed, the capitalization responsibilities of SINGER, BRODY and WBDC rendered them indistinguishable alter egos.  Because SINGER and BRODY never made their required capital contribution to WBDC, WBDC never made its required capital contribution to 1 DUPONT CIRCLE, which caused failure of the business as above described.

53.     On information and belief, GUO kept both ALLIANCE CAPITAL and US FORTUNE grossly undercapitalized when she was individually and personally required to provide funds to it so that it could make its required capital contribution to 1 DUPONT CIRCLE of at least $837,222.12.  Indeed, the capitalization responsibilities of GUO, ALLIANCE CAPITAL and US FORTUNE rendered them indistinguishable alter egos.   Because GUO never made her required capital contribution to ALLIANCE CAPITAL and US FORTUNE, ALLIANCE CAPITAL and/or US FORTUNE never made its required capital contribution to 1 DUPONT CIRCLE, which caused failure of the business as above described.

54.     SINGER and BRODY failed to maintain any of the corporate formalities, or follow protocols or governance procedures, required by the Operating Agreement in carrying out the business of WBDC, and likewise, GUO failed to maintain any of the protocols or governance

procedures required by the Operating Agreement in carrying out the business of ALLIANCE CAPITAL and US FORTUNE.  These protocols or governance procedures included, among others, forming a three-member Board of Managers, seeking permission of the Board of Managers in making major decisions such as making capital expenditures greater than $50,000, and calling meetings of investing members.

55.     On information and belief, SINGER and BRODY for WBDC, and GUO for ALLIANCE CAPITAL and US FORTUNE, never maintained for their respective companies offices or telephone numbers, held meetings or kept minutes, or maintained accurate records including complete accounting records with receipts.  Further, each freely commingled funds with their respective companies.  Moreover, BRODY personally guaranteed the WBDC lease described above up to $500,000.

- **All Defendants Are Fiduciaries of the Plaintiffs.**

56.     Each of the defendants, in their capacities as Managing Members of 1 DUPONT CIRCLE, as individual principals of and/or as alter egos of the Managing Members, and/or as counsel for the plaintiffs, managed, held and were responsible for the assets of the plaintiffs, possessed unique or specialized expertise upon which the plaintiffs relied, held special relationships of trust and confidence with the plaintiffs, and therefore owed a fiduciary duty to the plaintiffs.

- **All Defendants Failed to Disclose Material Facts to the Plaintiffs.**

57.     The defendants in their capacities as Managing Members of 1 DUPONT CIRCLE, as individual principals of and/or as alter egos of the Managing Members, and/or as counsel for the plaintiffs, failed to disclose to the plaintiffs that they never made their capital contribution in 1 DUPONT CIRCLE and kept it undercapitalized, that there were changes in the Managing

Members of 1 DUPONT CIRCLE, of the failure to pay rent on behalf of 1 DUPONT CIRCLE, and of the termination of the lease for the Wahlburgers restaurant and the poor financial condition of 1 DUPONT CIRCLE.

- **The Defendants' Refusal to Provide a Complete Accounting for 1 Dupont Circle to the Plaintiffs.**

58.     Plaintiffs, through their representatives, have made repeated requests of the defendants for information regarding the financial state of and for a complete accounting for 1 DUPONT CIRCLE, including the status of and disposition of plaintiff's investments, but defendants have refused to provide a complete accounting, including proof of debits and credits, as well as payments, receipts and complete bank statements.

### FIRST CLAIM FOR RELIEF

**Declaratory Judgment that
Singer and Brody are the Alter Egos of WBDC, and
Guo is the Alter Ego of Alliance Capital and US Fortune**

59.     The plaintiffs repeat and reallege the foregoing paragraphs set forth above as though fully set forth herein.

60.     As alleged and described above, SINGER and BRODY are principals and/or owners of WBDC, and both individuals are the alter ego of WBDC.

61.     As alleged and described above, ZHIHUI "JULIE" GUO is the principal and/or owner of both ALLIANCE CAPITAL and US FORTUNE, and the alter ego of both entities.

## SECOND CLAIM FOR RELIEF

### Equitable Accounting

### (1 Dupont Circle, WBDC, Alliance Capital, US Fortune, Singer, Brody and Guo)

62.     The plaintiffs repeat and reallege the foregoing paragraphs set forth above as though fully set forth herein.

63.     1 DUPONT CIRCLE, WBDC, ALLIANCE CAPITAL and US FORTUNE, along with their principals, SINGER, BRODY and GUO, all owed a fiduciary duty to the plaintiffs, and all had special relationships of trust and confidence with the plaintiffs, based upon the plaintiffs' investments in 1 DUPONT CIRCLE.

64.     Plaintiffs, through their representatives, have made repeated requests of defendants for information regarding the financial state of and for a complete accounting of 1 DUPONT CIRCLE, including the status of and disposition of plaintiffs' investments, but defendants have refused to provide a complete accounting, including proof of debits and credits, as well as payments, receipts and complete bank statements.

65.     Defendants breached their fiduciary duty to plaintiff by failing to apprise them and their representatives of the financial state of and provide a complete accounting for 1 DUPONT CIRCLE in which plaintiffs have a substantial interest, causing damage to the plaintiffs.

66.     The plaintiffs have no other means to obtain an accounting for 1 DUPONT CIRCLE other than by defendants.

67.     The plaintiffs have no adequate remedy at law with which to obtain from defendants an accounting for 1 DUPONT CIRCLE and are therefore entitled to such an accounting as an equitable remedy.

## THIRD CLAIM FOR RELIEF

### Breach of the Operating Agreement

### (WBDC, Alliance Capital, US Fortune, Singer, Brody and Guo)

68.     The plaintiffs repeat and reallege the foregoing paragraphs set forth above as though fully set forth herein.

69.     The plaintiffs fully performed their obligations pursuant to the Operating Agreement as described above.

70.     WBDC, ALLIANCE CAPITAL and US FORTUNE all breached the Operating Agreement by failing to make or fully make the Managing Member capital contribution of $837,222.12 in 1 DUPONT CIRCLE representing 45.57% of total project costs.

71.     WBDC, ALLIANCE CAPITAL and US FORTUNE all breached the Operating Agreement by entering into transactions which materially changed the management of the 1 DUPONT CIRCLE without any form of disclosure to or consent by plaintiffs as Investing Members of 1 DUPONT CIRCLE.

72.     WBDC, ALLIANCE CAPITAL and US FORTUNE all breached the Operating Agreement by selling and/or assigning, and/or participating in the sale and assignment, of the Managing Member's common equity membership interests in 1 DUPONT CIRCLE, as well as in failing to seek plaintiffs' written consent to same, resulting in eviction and making it impossible for 1 DUPONT CIRCLE to maintain its lease and carry on its ordinary business.

73.     WBDC, ALLIANCE CAPITAL and US FORTUNE all breached the Operating Agreement by failing to make monthly rental payments and to maintain a lease for 1 DUPONT CIRCLE, resulting in eviction and making it impossible to carry on the ordinary business of 1 DUPONT CIRCLE.

16

74.     For the reasons stated above, SINGER and BRODY were and are the alter egos of WBDC, and GUO was and is the alter ego of ALLIANCE CAPITAL and US FORTUNE, and each individual is separately and individually liable for the breach of the Operating Agreement by their respective company.

75.     As a result of the foregoing, the plaintiffs have sustained damages.

## FOURTH CLAIM FOR RELIEF

### Breach of Fiduciary Duty Owed by Attorney

### (Guo & Goodwin Law)

76.     The plaintiffs repeat and reallege the foregoing paragraphs set forth above as though fully set forth herein.

77.     As alleged and described above, GUO and GOODWIN LAW, as attorneys for the plaintiffs, owed a fiduciary duty to the plaintiffs and were required to act in the plaintiffs' best interests, with utmost honesty, loyalty and candor in disclosures, and to deal with plaintiffs fairly and in good faith.

78.     In addition to its direct liability for breach of an attorney fiduciary duty to its clients owed by GOODWIN LAW to plaintiffs, GOODWIN LAW is also liable for the misdeeds of GUO described herein pursuant to the doctrine of *respondeat superior*.

79.     The misconduct alleged and described above by GUO and GOODWIN LAW constitutes breach of attorney fiduciary duties to the plaintiffs.

80.     Such misconduct, set forth more fully above, includes but is not limited to making numerous misrepresentations and non-disclosures of material facts to the plaintiffs as described above; referring the plaintiffs to invest in a business operated by SINGER and BRODY, neither of whom were suitable fiduciaries for plaintiffs' investments; participating in the transfer of

Managing Member common equity membership interests from WBDC to ALLIANCE CAPITAL and US FORTUNE without any disclosure to or consent from plaintiffs as required under the Operating Agreement which led to the termination of the lease agreement and the failure of the EB-5 project; concealing the termination of the lease agreement from plaintiffs and making false representations to plaintiffs that the restaurant would have a grand opening soon; keeping ALLIANCE CAPITAL and US FORTUNE undercapitalized which caused the EB-5 project to fail; and failing to make lease payments for 1 DUPONT CIRCLE which led to the termination of the lease agreement  and caused failure of the EB-5 project.

81.     As a result of the foregoing breaches of fiduciary duty, the plaintiffs have sustained damages

82.     As a result of the foregoing breaches of fiduciary duty, the plaintiffs are further entitled to at least a complete disgorgement of all fees paid to GUO and GOODWIN LAW regardless of how such fees are characterized.

**FIFTH CLAIM FOR RELIEF**

**Breach of Fiduciary Duty Owed to Investors**

**(1 Dupont Circle, WBDC, Alliance Capital, US Fortune, Singer, Brody and Guo)**

83.     The plaintiffs repeat and reallege the foregoing paragraphs set forth above as though fully set forth herein.

84.     As alleged and described above, 1 DUPONT CIRCLE, as the subject and vehicle of the plaintiffs' investment, along with WBDC, ALLIANCE CAPITAL and US FORTUNE, as Managing Members who exercised exclusive authority and discretion to administer 1 DUPONT CIRCLE and the plaintiffs' investments,  as well as SINGER, BRODY and GUO, as the individual

directors and officers of Managing Members and the individual alter egos of Managing Members, all owed fiduciary duties to the plaintiffs and were required to act in the plaintiffs' best interests, with utmost honesty, loyalty and candor in disclosures, and to deal with plaintiffs fairly and in good faith.

85.    The misconduct alleged and described above by 1 DUPONT CIRCLE, WBDC, ALLIANCE CAPITAL, US FORTUNE, SINGER, BRODY and GUO constitute breach of fiduciary duty.

86.    Such misconduct, set forth more fully above, includes but is not limited to making numerous misrepresentations and non-disclosures of material facts to the plaintiffs; failing to adequately capitalize the Managing Members, and in turn, 1 DUPONT CIRCLE, which caused the EB-5 project to fail; participating in the transfer of 1 DUPONT CIRCLE Managing Member common equity membership interests from WBDC to ALLIANCE CAPITAL and US FORTUNE without any disclosure to or consent from plaintiffs as required by the Operating Agreement which led to the termination of the lease agreement and the failure of the EB-5 project; concealing the termination of the lease agreement from the plaintiffs and failing to make lease payments for 1 DUPONT CIRCLE which led to the termination of the lease agreement  and caused failure of the EB-5 project.

87.    As a result of the foregoing, the plaintiffs have sustained damages.

## SIXTH CLAIM FOR RELIEF

### Fraud in the Inducement and Fraudulent EB-5 Scheme

### (All Defendants)

88.     The plaintiffs repeat and reallege the foregoing paragraphs set forth above as though fully set forth herein.

89.     On information and belief, for the defendants, the 1 DUPONT CIRCLE EB-5 project was from the beginning a fraudulent EB-5 investment scheme.

90.     On information and belief, each of the defendants embarked on the 1 DUPONT CIRCLE EB-5 project with the intention to commit fraud against the plaintiffs, with the intention that the Managing Members would never make their full capital contributions as required by the Operating Agreement, would not maintain the lease by continuing to pay the lease payments due to landlord under the lease agreement, or otherwise comply with the other material terms of the Operating Agreement, offering memorandum and business plan for 1 DUPONT CIRCLE, and with the intention to use a portion of the plaintiffs' capital contributions for their own purposes and/or to retain a portion of the plaintiff's capital contributions for themselves.

91.     On information and belief, each of the defendants have in fact used a portion of the plaintiffs' capital contributions in 1 DUPONT CIRCLE for their own purposes and/or retained a portion of the plaintiff's capital contributions for themselves.

92.     The plaintiffs, to their detriment, justifiably relied upon the false promises and misrepresentations which the defendants knowingly and intentionally made in the Operating Agreement, the offering memorandum and the business plan with the intention that the plaintiffs rely thereon, by making their initial investments of $500,000 each and paying the "offering fees"

of $50,000 each to defendants, which they would not have done had they known of defendants' fraudulent intent *ab initio.*

93.     On information and belief, the defendants intended to and did gain the confidence of the plaintiffs by commencing the 1 DUPONT CIRCLE EB-5 project and processing the plaintiffs' immigration paperwork, but had the preconceived and undisclosed intention of not completing the project or opening and operating the business.

94.     On information and belief, the defendants' misrepresentations to and concealments from the plaintiffs made after commencement of the 1 DUPONT CIRCLE EB-5 project were made to cause the plaintiffs to continue their investments in 1 DUPONT CIRCLE.  Had the true facts about the status and nature of the 1 DUPONT CIRCLE EB-5 project been timely disclosed to plaintiffs, they would have demanded that the project be terminated and their investments refunded at a time when more of their invested funds had not yet been spent or otherwise transferred, and thus the percentage of their investments that plaintiffs would have been able to recover from the accounts of 1 DUPONT CIRCLE would have been greater compared to the later point-in-time in which plaintiffs learned the true facts.

95.     The failure of the 1 DUPONT CIRCLE EB-5 project caused by defendants' fraudulent EB-5 investment scheme has rendered it impossible for the project to create the at least ten jobs required for issuance of unconditional U.S. permanent resident status to plaintiffs, and thus under these circumstances, the plaintiffs will never obtain such status, which was an express purpose of the project as stated by defendants, as well as in the offering memorandum and business plan.

96.     As a result of the foregoing, the plaintiffs have sustained damages.

## SEVENTH CLAIM FOR RELIEF

**Securities Fraud,
Violations of Section 10 of the Securities and Exchange Act of 1934 and
Rules 10b-5(a) and 10b-5(c)**

**(All Defendants)**

97.     The plaintiffs repeat and reallege the foregoing paragraphs set forth above as though fully set forth herein.

98.     The preferred equity membership interests of Investing Members under the Operating Agreements, held by the plaintiffs, were are securities within the meaning of the Securities and Exchange Act of 1934, 15 U.S. Code § 78a et seq.

99.     By engaging in the conduct described more fully above, each of the defendants, directly or indirectly, by using means or instrumentalities of interstate commerce or of the mails, used or employed, in connection with the sale of securities, manipulative or deceptive devices or contrivances to defraud the plaintiffs in violation of Section 10(b) of the Securities and Exchange Act of 1934.

100.     By engaging in the conduct described more fully above, each of the defendants, directly or indirectly, by using means or instrumentalities of interstate commerce or of the mails, a) employed devices, schemes and artifices to defraud the plaintiffs, b) made untrue statements of material fact and omitted statements of material fact, and c) engaged in acts, practices and a course of business which operated a fraud upon the plaintiff, all in violation of Rule 10b-5 promulgated under the Securities and Exchange Act of 1934, 17 CFR § 240.10b-5.

101.     As a result of the foregoing, the plaintiffs have sustained damages.

102.    On information and belief, all the foregoing factual claims in this Complaint will likely have, if they do not already, evidentiary support after a reasonable opportunity for further investigation and/or discovery.

**PRAYER FOR RELIEF**

WHEREFORE, the plaintiffs request entry of a judgment in their favor and against each of the defendants for the following, cumulatively and/or alternatively:

1.    Declaring that MARK ANDREW SINGER and KEVIN BRODY are both alter egos of WBDC HOSPITALITY, LLC, and as a result, they are each separately and individually liable for all its debts and obligations, including judgments;

2.    Declaring that ZHIHUI "JULIE" GUO is the alter ego of both ALLIANCE CAPITAL INTERNATIONAL LIMITED and US FORTUNE LIMITED, and as a result, she is liable for all debts and obligations, including judgments, of both companies;

3.    From all defendants, the equitable remedy for the plaintiffs of an accounting for 1 DUPONT CIRCLE, LLC trading as WAHLBURGERS D.C.;

4.    From all defendants, jointly and severally, for voiding and/or rescission of the Operating Agreement and restitution of $550,000 for each plaintiff;

5.    From GUO and GOODWIN LAW, a complete disgorgement of all fees paid to GUO and GOODWIN LAW by plaintiffs regardless of how such fees are characterized;

6.    From all defendants, jointly and severally, for contractual and/or business expectation damages and/or lost profits and investment returns;

7.    From all defendants, jointly and severally, for reasonable attorney's fees and costs of suit and disbursements as allowed by law;

8.     From all defendants, jointly and severally, for pre-suit interest and prejudgment interest as allowed by law; and

9.     For such other or further relief which this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

The Plaintiffs demand a trial by jury on all issues.


Dated: New York, New York
       April 1, 2019

ZHONG LUN NEW YORK LLP


By: _____/s/_____
    Kerry J. Kaltenbach
    Two Wall Street, 21st Floor
    New York, NY  10005
    e-mail: kerrykaltenbach@zhonglun.com
    tel: (212) 380-8388
    fax: (212) 810-1995
    *Attorneys for Plaintiffs*